IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KARLTON H. KEMP, as Personal                                              PLAINTIFFS
Representative of the Estate of Jason
Kelley, on behalf of the Estate of Jason
Kelley, on behalf of JAN KELLEY,
JORDAN KELLEY, KAYLA KELLEY,
MATTHEW HENDRICKS, JACK
KELLEY, JOEL KELLEY, and JENNIFER
MCKINNEY

VS.                              CASE NO. 05-CV-4039

THE DUPPS COMPANY                                                          DEFENDANT

**ORDER**

Before the Court is Defendant's Motion to Strike. (Doc. 42-1). Defendant seeks to strike as unqualified Plaintiff's liability expert, John Morse. Plaintiff has responded. (Docs. 48-1). Also before the Court is Defendant's Motion to Strike Plaintiff's Rebuttal Report and New Opinions of Plaintiff's Expert. (Doc. 55-1). Plaintiff has responded. (Doc. 73 ). The Court held a hearing and heard arguments from counsel on both motions. The Court finds the motions ripe for consideration.

BACKGROUND

This case arises out of the death of Jason Kelley on October 10, 2003 at Tyson Foods, Inc.'s River Valley Animal Foods ("RVAF") facility in Texarkana, Arkansas. Plaintiffs allege that Jason Kelley died as a result of exposure to hydrogen sulfide gas emitted from a Dupps' Continuous Hydrolyzor at the RVAF facility. After filing suit for Jason Kelley's death, Plaintiffs retained John Morse, Ph.D., a professional engineer, as their liability expert.

## DISCUSSION

The Court is satisfied that John Morse is qualified to testify as an expert witness in this case. Morse obtained his Ph.D. in mechanical engineering at LSU in 1988, where he wrote his doctoral dissertation on thermal degradation, the same process that occurs inside a hydrolyzor. He taught courses at the undergraduate and graduate level in mechanical engineering at the University of South Carolina for seven years, including thermodynamics, combustion, fluid mechanics, thermal systems design, physics, hazard evaluation, and design for safety. (Doc. 42-2). Morse also has been a professional engineer for the last 11 years, working as a forensic engineer in numerous cases. Morse has professional experience designing warnings, safety instructions and machine guards for various industrial and consumer machinery. In this case, Morse toured the RVAF facility, carefully reviewed court documents and applied scientific and engineering principles with which he was familiar to the facts of Jason Kelley's death. Thus, the Court finds that Morse possesses adequate educational and professional experience to qualify him as an expert witness in the field of engineering in this case.

Having determined that John Morse is qualified to testify as an expert in this case, the scope of his testimony must next be considered. Upon review of Morse's Preliminary, (Doc. 48-13) Supplemental, (Doc. 48-14) and Rebuttal (Doc. 54-2) reports, the Court finds that Morse identifies possible defects of the continuous hydrolyzor and states several opinions with a sufficient basis in science and engineering to satisfy *Daubert v. Merrill-Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d. 469 (1993) and its progeny.

Therefore, Morse will be allowed to testify regarding Dupps' hazard analysis and risk analysis in designing and manufacturing of the continuous hydrolyzor. Morse contends, and will be allowed to testify that Dupps relied on industry experience instead of its own independent testing in designing the continuous hydrolyzor before placing it on the market in 1995. Second, Morse will be allowed to testify regarding the warnings, or lack thereof, on the continuous hydrolyzor. Third, Morse will be allowed to testify regarding Dupps' development of maintenance procedures, if any, for the packing gland of the continuous hydrolyzor. Finally, Morse will be allowed to testify regarding Dupps' development, if any, of a vapor head or other similar enclosure to contain and remove hydrogen sulfide from the continuous hydrolyzor. Thus, John Morse is qualified to testify, subject to these limitations, as an expert in this case.

Morse also states a number of legal conclusions and non-engineering opinions (i.e., Dupps was grossly negligent) in his reports. The Court believes Morse's legal conclusions constitute an invasion of the province of the jury and will not aid the jury in reaching its decision. *See Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411-12 (8th Cir. 1987). The Court will not allow John Morse to testify regarding his legal conclusions and non-engineering opinions. Morse's theories and opinions contained in his Preliminary, Supplemental and Rebuttal reports are all subject to these limitations.

## CONCLUSION

Upon consideration, the Court finds that both Dupps' Motion to Strike and Motion to Strike Plaintiff's Rebuttal Report and New Opinions of Plaintiff's Expert should be and hereby

are **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's expert will be allowed to testify according to the terms of this Order. Plaintiff's expert will not be allowed to testify regarding his legal conclusions and non-engineering opinions.

  **IT IS SO ORDERED**, this 25th day of August, 2006.

                 /s/Harry F. Barnes
               Hon. Harry F. Barnes
               United States District Judge